---

## SUPREME COURT.

### In the matter of the application of DANIEL D. CONOVER agt. CHARLES DEVLIN.

In a proceeding under the Revised Statutes, (1 *R. S. p.* 125, § 56,) to get possession of books and papers appertaining to an office, the applicant must show himself to be the *actual* successor to the office.

The abstract right to the office cannot be tried in such a proceeding. A party in the office, claiming it, and having color of title, may maintain the proceeding.

Whether a person not actually in an office should, in any case, have the books and papers appurtenant to it, awarded to him, in a proceeding under this statute, on the ground that he has a right to the office—*quere?*

Where an office, by the death of the incumbent, becomes and is actually vacant, and a person, in good faith, claiming title to it, and having color of title, enters and performs the duties of it, he is in possession, and is within the meaning of the statute "the successor to such office." Such a person is *prima facie* entitled to possession of the books and papers pertaining to the office.

He is the officer *de facto*, and his rights, arising from such possession with color, can only be divested by a suit proper to try and decide the question of title, which is a *quo warranto*.

Until his right is judicially determined, he is to be deemed (for the purpose of this proceeding, at least) to be the officer *de jure* as well as *de facto*.

The office of street commissioner of the city of New-York is an office " of this state," and is embraced in the terms of the act of Feb. 3d, 1849, which provides for appointment by the governor " whenever vacancies shall exist," * * * " in any of the offices of this state," &c., &c.

In the matter, &c., of Conover agt. Devlin.

Although it is a city office, within the meaning of that term used in the constitution of 1846, as distinguished from county, town and village offices, still it is, within the meaning of the act of 1849, "an office of this state."

The offices called city, county, town and village offices, to distinguish them from each other in the constitution, are offices of this state, and within the meaning of the act of 1849.

*New-York Special Term, July*, 1857.

A MOTION is made by the applicant for an order compelling the respondent to deliver him the books and papers appertaining to the office of street commissioner of the city of New-York.

The motion is made under 1 *Rev. Stat. p.* 125, § 56, which provides that when a person, appointed or elected to an office, shall die, and any books or papers appertaining to such office shall come to the hands of any person, the successor to such office may demand them; and, on their being withheld, an order may be obtained on application to a justice of the supreme court for their delivery; and on the omission of the person to deliver them, a warrant may be issued, and the property delivered to the successor.

D. D. FIELD, D. FIELD *and* W. C. NOYES, *for motion.*

J. T. BRADY, R. BUSTEED *and* A. J. WILLARD, *opposed.*

PEABODY, *Justice.* The facts appear to be, that Joseph S. Taylor, the late incumbent of the office, was elected in Nov., 1855, for the term of three years from the first day of January following, [1856.] He entered, and continued in the office until the 9th day of June, 1857, when he died.

On the 12th day of June, Daniel D. Conover was appointed by the governor, in due form, to fill the place. On the 13th of June he took the oath of office required by law, and filed it with the proper officer. He also executed, on the same day, and filed with the proper officer, an official bond, with two sureties, in the penal sum of $10,000.

He then proceeded to the rooms belonging to the city, occupied as the office or place of business of the street commissioner, entered them, claimed that he was street commissioner, exhib-

In the matter, &c., of Conover agt. Devlin.

ited his commission to the employees, and asserted authority over them and the business of the office, and, locating himself at a desk, offered to perform, and did, in one instance at least, perform official business as street commissioner. He remained there, claiming to be in possession of the place and business, by virtue of his office, until the usual hour of closing the place for the day, when he left, as the place was closed.

The next day he returned, resumed his place and official position, and remained some time there at his desk, at the place properly occupied by the head of the department, as he claimed to be. In the course of the day he was removed forcibly from the rooms. He returned next day, and was again removed by the same person. On these occasions his removal was without violence, but it was open and forcible, and with an expressed determination not to tolerate his presence there.

The deputy street commissioner, who was rightfully in possession of the books and papers, and in charge of the business while the vacancy in the superior office continued, refused throughout the time of the applicant's presence, to recognize his claims to official character, and withheld from him the manual control of the books and papers belonging to the office.

On the 16th of June, and after Conover's last removal from the premises, the respondent having received the appointment of the mayor, with the consent of the board of aldermen, filed, in the proper place, his official oath and bond duly approved, and entered the rooms and took possession of the books and papers, claiming to be street commissioner by virtue of his appointment, and thence hitherto has so continued.

On this state of facts the applicant demands an order from me, and a warrant by which he shall be put in possession of the books and papers appertaining to the office.

The exact function devolved on me by the statute under which I am called to act being ascertained, much of the difficulty of deciding the case before me will, I think, be overcome. To this inquiry, then, I will direct my attention first.

The section of the statute (1 R. S. 125, § 56,) provides, in effect, that if a person, elected to an office, die, and any books

or papers, appertaining to the office, shall come to the hands of any person, the successor to the office may adopt this proceeding to get possession of those books and papers.   This is a very brief statement of the substance of that section as far as it is applicable to this case.

A person has been elected to the office of street commissioner of the city of New-York.   That person has died, and books and papers belonging or appertaining to that office have come to the hands of a person, [the respondent.]   Thus far the case before me comes within the statute.

These facts are not seriously controverted, and these having occurred, a certain person, or rather a person sustaining a certain character, is authorized to adopt this proceeding before me. " The successor to such office may," and he alone of all the world may, through this statute, invoke my aid in this proceeding to obtain possession of such books or papers.   The applicant says he is the successor of the deceased to that office, and he produces what he claims is evidence of his title—to wit, a commission showing his appointment to the office by the governor of the state.   The effect of this is a matter of controversy between the parties.

The applicant asserts that it confers on him the office, and the respondent denies that it does this, and the power of the governor to fill the office by appointment is at once in issue between the parties.   On the decision of that question must the ultimate rights of the parties to this proceeding mainly depend.

The respondent claims the office by virtue of an appointment from a different source—the mayor, with the consent of the board of aldermen; but this title is not necessarily to be examined here; for if the applicant's claim is good, the respondent's is, of course, bad, and if the applicant's is bad, it is not important to examine that of the respondent, for this proceeding can only be maintained on the strength of the applicant's claim.

If, therefore, the applicant's claim be not well founded, he must fail, and the relief sought here must be denied, even though the claim of the respondent should seem to be equally defective.

In the matter, &c., of Conover agt. Devlin.

The only question, then, of all those raised and discussed on the argument of this case, which I need to decide, is, whether the applicant is the successor to the office of street commissioner? The power of the governor to make the appointment depends entirely on the act of February 3, 1849, which provides, that "whenever vacancies shall exist, or shall occur in any of the offices of this state, where no provision is now made by law for filling the same, the governor shall appoint some suitable person, who may be eligible to the office so vacant, or to become vacant, until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected."

An objection was made on the argument that this statute did not apply to this office, this being a city and not a state office. I think it is a city office; that is, that it belongs to the class called city, as distinguished from the classes called county, town, village, or state offices; but these denominations are used to distinguish the several classes of offices from each other, for purposes of convenience chiefly, and perhaps wholly : and the fact that an office comes within the class denominated county, village, or city offices, as distinguished from those usually known by the more generic name of state offices, does not prove, or tend to prove, that it is not, in fact, a state office, or, in the language of the act, not one " of the offices of this state." On the contrary, city, county, town and village offices are all of them offices of this state, in the more general and comprehensive sense in which the language of this statute is evidently used; and this, though a city office, is nevertheless an " office of this state," and embraced in the terms of this statute.

This statute was passed to carry out a provision of the constitution, (*Art.* 10, § 5,) which directs, in most general terms, that " the legislature shall provide for filling vacancies in office," and neither the constitution, in using the terms " vacancies in office," nor the statute, in using the terms " vacancies in any of the offices of this state," seems to look to a provision for vacancies in a particular class of offices—quite the reverse.

This statute provides for filling this office, if no other provi-

sion was then ["is now"] made by law for filling it.   To the application of this statute to this case several other objections besides this are made by the respondent.

*First.* That if it applies to city offices, it is, in a certain aspect, repugnant to the constitution, (*Art.* 10, § 2,) which provides that all city officers, whose appointment is not provided for by that constitution, shall be elected by the electors of such cities, or appointed by such authorities thereof as the legislature shall designate for that purpose.

*Second.* That the act of February 3, 1849, cannot, from its nature, be applied to this office, it being not elective.   That act provides that the appointee of the governor shall hold "until the commencement of the political year next succeeding the first annual election at which such officer could be by law elected," and, as this office is not elective, no such election can ever occur, and hence the term of office of the appointee would never expire.

*Third.* That the charter of 1857, (§ 32,) in continuing in force all the ordinances relative to the departments, continued in force the ordinance of 1849, which gave the power to the mayor; and in effect, by continuing the ordinance in express terms, perhaps enacted it as a statute, and gave it an effect greater than it would have had as an ordinance merely.

*Fourth.* That the power to appoint to sucn an office inheres in the city, by virtue of its general powers, without express provisions on the subject.

*Fifth.* That there was no actual vacancy to be filled, Turner, the deputy, being the incumbent, by virtue of the ordinance to that effect, on the death of the former incumbent.

I do not attempt to enumerate all the objections raised by the respondent.   Some of them certainly do great credit to the ingenuity and skill of counsel, as do the arguments on both sides of this case to those who participated in them respectively.   I merely state some of the points, to show that there is a question to be tried, and although it may seem to me not difficult to decide where the appointing power is by law vested, I think that a reasonable question of title to the office exists,

and that such a question is not proper to be tried in this proceeding.

It was never intended by the legislature to authorize a justice of this court sitting here to decide, in effect, the title to an office. If there is a reasonable doubt as to who is entitled, it should be decided in a direct proceeding for the purpose—an action of *quo warranto*, which is with us the substitute for the old writ of that name.

This is a proceeding to get present possession merely of the books and papers incident to an office, not of the office itself; and it should not be allowed to answer that end practically, which it would do if the books and papers necessary to the functions of an office are to be awarded a party on his merely showing a title to the office itself. In these views I find myself sustained by authority, and among others by the case of *The People* agt. *Stevens*, (5 *Hill*, 616,) and the opinion of Judge KENT, reported at page 631 of the same volume, and that of Justice EDMONDS *In the matter of Whiting*, (2 *Barb.* 513.)

I am inclined, however, to go further than these cases, and to limit the application of this proceeding to cases of possession merely. My own view of this statute is, that the question of title to the office should not be allowed to be tried in it at all; that the abstract right of an applicant is unimportant, where possession with color of title is clearly shown; that it should not be inquired into at all, further than, perhaps, to see, if in possession, that he has color of title; that being in the office, under color of right, he should have this proceeding to get the books and papers; and, on the other hand, that having the best possible right to an office, one should not have the possession of the books and papers by this proceeding, while, it is apparent, he is not in the occupancy of the office, and not in a situation to exercise the functions of it.

This whole proceeding is on the idea that the applicant has succeeded to the office; that he is, in fact, "the successor to such office;" that he is in the office, and needs the books and papers as means or instruments with which to perform the duties of it. They are incident to the office, and should attend

In the matter, &c., of Conover agt. Devlin.

it ever—should attend the possession and exercise of it, not the mere right to it, however clear, if it appear that the right is not accompanied by actual incumbency of it, and that, therefore, the possession of them would not enable him to discharge the duties of the office.

The possession of them as the means of exercising the functions of the office is indispensable to the officer and the public; and the object of this statute is to put them into possession of the actual incumbent for actual use for the time being, not to decide who, in the abstract, is entitled to them because he is entitled to the office to which they pertain. The title to them must ultimately depend on the title to the office; and so I think should the right to present possession depend on the fact of present possession of the office to which they are appurtenant. I doubt much whether a party not in possession of an office, and therefore not in a condition to exercise the functions, should, in any case, have the possession of the books and papers of it awarded to him in this summary manner, even if his title to it were perfect; and I am inclined to think, on the other hand, that a party in an office with color of title, and performing the duties of it, should have them. The acts of an officer *de facto* are valid in law, and the policy of the law is, that the actual incumbent of an office shall perform the duties of it for the time *being; that the functions of an office shall* not cease or be suspended because of a doubt about the title of an incumbent; and hence it is the policy of the law, and of this statute as a part of the system, that the incumbent shall have at all times the means of performing these duties—the books and papers as well as the other means.

This statute is for the actual incumbent, the actual " successor to such office," rather than the person entitled to succeed to it. It is apparent to my mind that it is not intended for the party entitled, merely because he is so entitled. The only proper mode for a person entitled to an office, but not in possession of it, to assert his title, is by the action of *quo warranto.* In that action his title may be established judicially, and possession acquired; and that being done, he is in a condition to

avail himself of this proceeding to get possession of the books and papers incident to the office. He is in a condition to use them, and his adversary (being ousted) is not in such a condition. They in that case accompany, as I think they should always, the possession and user of the franchise.

From what has been said above, it is apparent that the result of this proceeding with me must depend chiefly on the question of possession of the office by the applicant. Was he ever in possession of it? What is the evidence on that subject? It is proved that he received a commission; that he made and filed with the proper officer the oath of office; that he made the proper bond and filed it with the proper officer; that he went into the department devoted to the transaction of the business of the office, containing the books, papers and paraphernalia of the office, claiming to be the street commissioner and the head of the office, exhibited his commission and proofs of his title, asserted his title and authority over the business, clerks and employees of the establishment, assumed for himself a seat and desk for the transaction of business, and announced himself ready for official business, and actually performed an official act in granting a permit for some purpose. He remained there through the day to the hour of closing the office, and returned thither the next morning, renewing all his claims, and resuming his place at his desk for the transaction of business, and continued to occupy the place under his claim of office until removed thence by force late in that day. The next day he returned and repeated all his claims in language and acts, and remained again until he was again ejected by force, and assured by the man taking the lead in his expulsion, that his presence there would not be tolerated, and that all efforts to remain there would therefore be unavailing. He did all he could do towards assuming possession of the office, and claimed to be in it by virtue of his appointment. To be sure, Turner, the deputy commissioner, did not yield to him possession of the books and papers, but refused to do so under the instructions of the mayor to that effect, and continued himself to transact the business of the office as such deputy; and Bennett, by force, ejected

him from the apartments: but neither of these acts of the mayor, Turner, or Bennett can affect the rights of the applicant. They had no office to dispense, no judgment to pronounce on the claim of the applicant; had no power in the premises, by doing or withholding any action to create or. change any rights of the applicant; and their withholding or yielding their recognition or assent to his claims could not affect any increase or diminution of those rights. The office was vacant from the death of Taylor: Turner merely had power to act as street commissioner in case of a vacancy. (*Corp. Ord.*, ed. of 1856, *p.* 52, § 234.) "In case of vacancy, * * * the deputy shall act as street commissioner until the vacancy shall be supplied by a new appointment." This did not make him street commissioner. It certainly did not fill the office, so that no vacancy remained to be filled. There is no foundation for such a claim. If he (as the argument was) filled the vacancy, what vacancy, in the language of the ordinance, remained to "be supplied by a new appointment?" There is nothing to suggest such an idea, and the very language of the ordinance under which the claim is made, so far from authorizing, excludes it. The possession of this property of the office, thus withheld from him, was not at all essential to his possession of the office or franchise itself; and whether this assertion of authority over it, which he lacked the physical force to maintain, be deemed in law as amounting to possession or not, is not important. He was not the more street commissioner if he had, or the less so if he had not, that possession of the property.

It seems hardly necessary to add that, whatever were his relations or rights to the office, or the property pertaining to it, the forcible removal of him against his will from the rooms occupied for the transaction of the business of this office, and from the presence of the property pertaining to it, cannot affect them. His rights are the same as if he had remained undisturbed, and had continued without interruption the course he attempted to pursue. The office was vacant, and he, with claim and color of title, entered it and assumed the franchise.

In the matter, &c., of Conover agt. Devlin.

There is no pretence that he has resigned or forfeited any right he thus acquired. It follows that he is now in possession of those rights. He is therefore now street commissioner *de facto*. His title to the office may be tested in the proper proceeding; but, as was strenuously insisted by the respondent on the argument, the title of one in possession under color of title cannot be tried here. For the purpose of this proceeding, possession with color of title is sufficient.

It is said that he was not in the office, because his bond was not approved by the mayor. This is one of the questions to be tried in the suit for testing the title to the office, and must be referred to that forum. It is replied to this question among other things—

1. That no bond is required by law.

2. That the approval, being merely a mode of determining its sufficiency, is not indispensable—the sufficiency being shown otherwise.

3. That the efforts of the applicant to get the approval of the mayor, and his refusal to attend to it, excuse the omission, even if it were otherwise necessary.

4. That if an approval was necessary, and nothing had been done to excuse the want of it, still the applicant was in possession, even if the entry without the approval was wrongful.

Here are several grave questions arising, by no means free from difficulty, and not at all proper to be tried here. He claimed to be in the office. He claimed also to have complied with all the legal conditions of the appointment, and for this he shows ample color. What these conditions were, and whether they were precedent or not, and whether they had been fulfilled, and if not, whether the fulfillment is excused by the facts urged to that end, and if not excused, what the effect of non-fulfillment is to be, are all questions fairly arising on the facts in this case, and to be considered whenever the question of title shall be fundamentally decided. They cannot be properly examined in this informal and summary proceeding. The fact of actual possession does not necessarily depend on the decision of that; and, as I have before intimated, wherever the

fact of the possession of an office can be discerned, as in some cases it can easily, and in others, like this, only with great difficulty and very indistinctly, this fact, fortified by color of title, should direct the course of the books and papers.

At the time he assumed the office the vacancy in it was undisputed. No one even claimed to be in it. The title of Mr. Devlin, whatever it may be confessedly, had its origin some days afterwards. His appointment bears date several days after that on which the applicant assumed possession by virtue of his appointment, and after his removal by force, not from the office—for unauthorized force could not divest him of possession of the franchise—but from the rooms and property dedicated to the uses of it in the discharge of its functions by the incumbent.

The rights of Conover, acquired by prior possession, can only be divested by legal measures : these measures have not been applied, and his rights remain. Being in possession, he was the officer *de facto*, and will continue to be until ejected, which can only be done by process of law. He has all the rights incident to possession, and with color of title.

My conclusions are, that Conover entered the office and took possession; that he has not been removed by legal warrant or authority, or left it himself, and consequently that he is still in and, for this purpose, entitled to possession; and consequently that the respondent, as the office can have but one incumbent, is not legally in possession. It follows that Conover is entitled to possession of the books and papers, and to have them delivered to him under this proceeding.